## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In Re* RAPID METALS, LLC,

        Debtor,

NEWPOINT ADVISORS CORPORATION,
PLAN ADMINISTRATOR OF THE
ESTATE OF RAPID METALS, LLC,

        Appellant,               Case No. 2:25-cv-10586

v.                                     Hon. Brandy R. McMillion
                                     United States District Judge

BANK OF AMERICA, N.A.,

        Appellee.

_____/

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL OF THE ADVERSARY COMPLAINT

The instant appeal arises from an adversary proceeding within the larger Chapter 11 bankruptcy proceedings of Rapid Metals, LLC ("Rapid" or "Debtor") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). During the course of the Chapter 11 proceedings, the Plan Administrator for the Estate of Rapid Metals, LLC ("Plan Administrator") filed an adversary complaint (the "Complaint") against Bank of America, N.A. ("BOA"), alleging multiple causes of action related to BOA's conduct under an Asset Based Lending Agreement (the "Loan Agreement"). BOA moved to dismiss the Complaint

under Federal Rule of Civil Procedure 12(b)(6).  *See generally* ECF No. 6.  After conducting a motion hearing on December 5, 2024, the Bankruptcy Court held a second hearing on February 13, 2025, during which it dismissed the Complaint in its entirety for reasons stated on the record during the hearing.  ECF No. 7, PageID.2537-2625; 2847-2907.  On appeal, the Plan Administrator challenges the Bankruptcy Court's interpretation of its prior bankruptcy orders and its dismissal of the remaining claims under Rule 12(b)(6).  ECF No. 6.  For the reasons explained below, the Court hereby **AFFIRMS** the Order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.

### A.      The Loan Agreement and Lending Structure

Prior to bankruptcy, Rapid Metals entered into an asset-based lending relationship with BOA pursuant to a written Loan and Security Agreement (the "Loan Agreement").  ECF No. 9, PageID.3313-3368.  Under the Loan Agreement, BOA extended a revolving line of credit to Rapid, secured by a first-priority lien on substantially all of Rapid's assets, including inventory, accounts receivable, deposit accounts, and proceeds of the foregoing.  *Id*. at PageID.3290.  The amount Rapid could borrow at any given time was governed by a borrowing-base formula tied primarily to the value of eligible accounts receivable and inventory.  *Id*. at PageID.3442.  The Loan Agreement granted BOA with "a lien on all of Rapid's

2

personal property 'whether now owned or hereafter acquired,' including accounts receivable." *Id* at 3332. It expressly required that any modification be made in a signed writing. *Id* at 3346. The Loan Agreement also required Rapid to provide periodic financial information, including borrowing-base certificates and compliance certificates, and contained a New York choice-of-law provision governing the parties' contractual rights and obligations. *Id*. at PageID.3440-3341.

**B.    Rapid's Financial Decline and Advances Under the Loan Agreement**

As Rapid's financial condition deteriorated, BOA continued to extend advances under the Loan Agreement. ECF No. 9, PageID.3295-3300. Rapid alleges that during this period BOA exercised its contractual discretion in a manner that permitted Rapid to borrow amounts that exceeded what should have been available under a strict application of the borrowing-base formula. ECF No. 6, PageID.2305-2306. Rapid further alleges that BOA's course of conduct in exercising such discretion amounted to a modification of the lending terms where BOA failed to strictly enforce reporting requirements and permitted advances despite missing or deficient compliance documentation. *Id*. In particular, Rapid points to two substantial advances made shortly before Rapid ceased operations, alleging that BOA approved the advance despite knowledge of Rapid's deteriorating financial condition. *Id*.

C.    **Bankruptcy Filing and Cash Collateral Orders**

On July 12, 2023, Rapid commenced the bankruptcy proceedings by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan.   ECF No. 8, PageID.2919.  Shortly after the petition date, Rapid sought authority as the debtor in possession to use cash collateral securing the obligations owed to Bank of America in order to fund the costs of liquidation.  *Id.* at PageID.2920.  The Bankruptcy Court entered the final cash collateral order (the "Cash Collateral Order") authorizing such use on September 27, 2023.  ECF No. 9, PageID.3251-3287.  The Cash Collateral Order recognized BOA's prepetition liens on substantially all of Rapid's assets, including inventory, accounts receivable, and proceeds thereof, and granted BOA replacement liens as adequate protection for the Debtor's use of cash collateral.  *Id.* The Cash Collateral Order included carve out provisions excluding certain categories of recoveries from BOA's replacement liens.  *Id.* at 3269.

D.    **Liquidation and Turnover Actions**

During the pendency of the Chapter 11 case, Rapid ceased operations and undertook a liquidation of its assets.  ECF No. 8, PageID.2922.  Inventory was sold, and outstanding accounts receivable were collected.  *Id.*  In connection with the collection of receivables, Rapid commenced several actions under 11 U.S.C. § 542 seeking turnover of amounts allegedly owed by customers for prepetition sales.  *Id.*

4

The Bankruptcy Court later confirmed Rapid's Chapter 11 plan (the "Confirmation Plan"). *Id.* Pursuant to the plan, Newpoint Advisors Corporation was appointed as plan administrator (the "Plan Administrator") and vested with authority to pursue causes of action belonging to the estate. *Id.*

## E.  The Adversary Complaint

Following confirmation, the Plan Administrator initiated an adversary proceeding against BOA, asserting eight causes of action. ECF No. 9, PageID.3227. The Complaint sought, among other relief, avoidance and recovery of post-petition transfers allegedly made to BOA, equitable subordination of BOA's claim, and damages arising from alleged prepetition misconduct in BOA's administration of the loan facility. *Id.* BOA moved to dismiss the adversary complaint under Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012. ECF No. 4, PageID.1668. The parties submitted briefings on the issues, and the Bankruptcy Court conducted a hearing on the motion. ECF No. 7, PageID.2537-2625. The Bankruptcy Court issued an oral ruling dismissing the complaint in its entirety and subsequently entered a written order granting BOA's motion to dismiss. *Id.* at PageID.2847-2907; ECF No. 9, PageID.2956-2957.

This appeal followed, with the Plan Administrator timely filing a notice of appeal. *See* ECF No. 1.

## II.

District Courts review appeals of bankruptcy court decisions by applying the standards of review normally applied by a federal appellate court.  *In re H.J. Scheirich Co.,* 982 F.2d 945, 949 (6th Cir. 1993); *see also In re Rice*, 478 B.R. 275, 278 (E.D. Mich. 2012).  Further, "[t]he standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court." *Terex Corp. v. Metro. Life Ins. Co.* (*In re Terex Corp.*), 984 F.2d 170, 172 (6th Cir. 1993).  "If a bankruptcy court interprets its own prior orders and acts, review of the order is for a clear abuse of discretion." *E. Coast Miner LLC v. Nixon Peabody LLP* (*In re Licking River Mining, LLC*), 911 F.3d 806, 810 (6th Cir. 2018).  District courts also "review the bankruptcy court's exercise of its equitable powers under an abuse of discretion standard." *In re Terex Corp.*, 984 F.2d at 172.  However, "bankruptcy court decisions that rely on or interpret the Bankruptcy Code are subject to *de novo* review." *In re Kramer*, No. 24-1269, 2025 WL 328675, at *2 (6th Cir. Jan. 29, 2025) (citation modified).  This Court reviews a Bankruptcy Court's denial of a motion to dismiss *de novo*.  *In re Rosenfeld*, 558 B.R. 825, 828 (E.D. Mich. 2016), *aff'd,* 698 F. App'x 300 (6th Cir. 2017).

In reviewing a 12(b)(6) motion to dismiss, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97

F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  The Court "must 'construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted).  Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Typically, courts must assess the sufficiency of the complaint "without resort to matters outside the pleadings."  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted).  If such materials are considered, the court generally must treat the motion to dismiss as one for summary judgment.  *Id.* (citation omitted).  Yet, when reviewing a 12(b)(6) motion, the court can consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to dismiss to one for summary judgment.  *Id.* (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

## III.

**A.    Jurisdictional Authority Pursuant to 28 U.S.C. 158(a)(1)**

Before reaching the merits of Rapid's appeal, the Court must engage in the threshold inquiry of whether it has jurisdiction to review this matter.  Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction over appeals from "final judgments, orders, and decrees" of the bankruptcy courts.  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *In re Janna W. Cundiff*, 227 B.R. 476, 477 (6th Cir. BAP 1998) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

BOA argues that the Court lacks jurisdiction here because the Bankruptcy Court's order granting its motion to dismiss was not final.  ECF No. 8, PageID.2929. Given that the Bankruptcy Court permitted the Plan Administrator fourteen days to request leave to amend the complaint prior to entry of the judgment, BOA contends that the adversary proceeding was not finally disposed of until the judgment formally dismissing the proceeding was entered on February 27, 2025.  *Id*.  According to BOA, the initial dismissal order therefore remained interlocutory and was not appealable under § 158(a)(1).  *Id.*  The Court disagrees.

Although the Bankruptcy Court afforded the Plan Administrator a brief period to request leave to amend, the court simultaneously dismissed every count of the adversary complaint on the merits.  That dismissal resolved all claims presented and

left no operative complaint pending before the court. As a result, any amendment would have been possible only if the court first reconsidered or set aside its dismissal; absent such relief, there was nothing left to amend. The court's allowance of a limited window to seek reconsideration did not reopen the merits or contemplate further adjudication, but merely delayed entry of judgment to afford the Plan Administrator an opportunity to request relief from the dismissal.

In the Sixth Circuit, a dismissal that fully resolves the merits of a complaint constitutes a final order, even where the court affords the losing party an opportunity to seek relief from the dismissal before judgment is entered. *See Energy Conversion Devices Liquidation Trust v. Trina Solar Limited*, 2015 WL 5216579 (E.D. Mich. 2015); *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). A request to amend following dismissal operates as a request for relief from the court's merits ruling and does not suspend the finality or operative effect of the dismissal once judgment is entered. *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008).

Here, Rapid did not seek reconsideration or leave to amend within the period allowed by the Bankruptcy Court. When judgment was entered, the adversary proceeding was conclusively terminated. Rapid was not required to pursue reconsideration in order to preserve its appellate rights, and its decision to forgo that option does not render the dismissal interlocutory. The Bankruptcy Court's order, therefore, became final and appealable upon entry of judgment. Because the order

9

finally disposed of the adversary proceeding, this Court has jurisdiction under 28 U.S.C. § 158(a)(1).  BOA's alternative request that the appeal be dismissed or treated as a request for interlocutory review under § 158(a)(3) and Bankruptcy Rule 8004 is unavailing.  Interlocutory review is unnecessary where, as here, the Bankruptcy Court entered a final judgment resolving all claims.

Accordingly, the Court concludes that it has jurisdiction to consider Rapid's appeal.

## B.    Choice of Law

The Court will move to examining the issues on their merits after briefly addressing the enforceability of the Loan Agreement's choice-of-law provision.

A dispute arose during the adversary proceedings before Bankruptcy Judge Oxholm as to whether New York or Michigan law governs the Plan Administrator's claims, and more specifically, whether certain claims are barred under the Statute of Frauds in either state.  The Complaint alleges that Michigan law should govern the parties' dispute because Rapid has no ties to New York; its bank accounts were in Michigan, all advances were funded in Michigan, and BOA maintained offices and conducted business in Michigan.  ECF No. 9, PageID.3307.  However, the Loan Agreement provides that New York law governs "all claims" between the parties. *Id.* at PageID.3349-3350.

Michigan courts adopt the approach set forth in Section 187 of the Second Restatement of Conflict of Laws in determining whether to enforce a valid choice-of-law provision. *Ace Hardware Corp. v. Owosso Ace Hardware, L.L.C.*, No. 04-CV-73360-DT, 2007 WL 9698262, at *10 (E.D. Mich. Sept. 28, 2007). Under section 187, a contractual choice of law provision will govern unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; ***or***
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 would be the state of the applicable law in the absence of an effective choice of law by the parties.

1 Restatement (Second) of Conflict of Laws § 187 (1971).

While it is the Court's view that Rapid's allegations establish the plausible inference that neither of the parties, nor the transactions which the agreement governs, have substantial relationship to New York; nor has BOA demonstrated some other reasonable basis for the choice; because Rapid's state-law claims fail as a matter of law under both New York and Michigan standards, the Court need not resolve any potential choice-of-law conflict to determine the merits of the appeal.[1]

---

[1] For the purposes of the appeal, the Court will apply Michigan Law to its *de novo* review of the Plan Administrator's state-law claims, noting where New York law also supports dismissal.

C.     **Merits of the Appeal**

Turning to a discussion of the merits, the Bankruptcy Court's decision and the parties' briefings organize the claims into two categories: clawback claims seeking recovery of funds remitted to BOA during the bankruptcy case (Counts I, II, and VIII), and state-law claims asserting various theories of lender liability (Counts III-VII).  The Court adopts this same framework and will analyze each in turn.

1. *Clawback Claims (Counts I, II, VIII)*

As previously noted, when a bankruptcy court interprets and enforces its own order or confirmed plan, its interpretation is entitled to substantial deference; and its "exercise of equitable powers to 'breathe life' into the provisions of a plan is reviewed under an abuse of discretion standard."  *In re City of Detroit*, 2024 WL 4349186, *2 (E.D. Mich. 2024).  "Abuse of discretion" is defined as a "definite and firm conviction that the [court below] committed a clear error of judgment....[I]f reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor & City Council v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002).

Here, the clawback claims aimed to recover the collections under 11 U.S.C. §§ 549 and 550 (Counts I and VIII) and for unjust enrichment (Count II), seeking a $1,796,850.88 judgment and any other damages proven at trial.  ECF No. 8, PageID.2924.  The Plan Administrator argues that the Bankruptcy Court erred in

dismissing the clawback claims at the pleading stage by failing to accept the Complaint's factual allegations as true.  According to the Plan Administrator, the Complaint plausibly alleged that the collections were recovered through Chapter 5 turnover actions under § 542 of the Bankruptcy Code and therefore constituted estate property excluded from BOA's liens under the Final Cash Collateral Order.  They further contend that whether the underlying actions were properly brought as turnover proceedings, as opposed to collections of disputed prepetition accounts receivable, is a factual question that could not be resolved on a Rule 12(b)(6) motion. By doing so, they argue that the Bankruptcy Court improperly resolved disputed factual issues concerning the nature of the Turnover Proceedings and the applicability of BOA's liens; and dismissal of Counts I, II, and VIII therefore constituted reversible error under *de novo* review.  ECF No. 6, PageID.2297.

BOA responds that the Bankruptcy Court properly dismissed the clawback claims because they turned on the court's interpretation of its own Cash Collateral Order and the confirmed Plan, which is reviewed for abuse of discretion.  BOA maintains that the Complaint itself established that the collections arose from prepetition accounts receivable on which BOA held a valid and unavoidable lien, and that collecting those receivables through turnover proceedings did not alter their character as collateral proceeds.  BOA further contends that the Bankruptcy Court did not resolve any disputed factual issues, but instead made a legal determination,

based on the face of the pleadings and the governing orders, that BOA was entitled to receive the collections.  Because that interpretation was reasonable and consistent with the plain language of the Cash Collateral Order and Plan, BOA argues that dismissal of Counts I, II, and VIII was proper and entitled to deference on appeal. ECF No. 8, PageID.2932, 2394.

Applying the deferential standard, the Court finds that the Bankruptcy Court did not abuse its discretion in dismissing Counts I, II, and VIII.  The Bankruptcy Court reasonably concluded that the collections constituted proceeds of prepetition accounts receivable subject to BOA's lien.  The receivables arose from prepetition sales and were already encumbered by BOA's valid and unavoidable lien at the time of the bankruptcy filing.  The subsequent turnover proceedings merely compelled payment of those existing obligations without altering their character or priority. Under § 552(b), BOA's lien continued post-petition and attached to the proceeds generated upon collection of the receivables.

The Bankruptcy Court further determined that the Cash Collateral Order's carveout applied to recoveries from avoidance actions, not to the collection of encumbered receivables through turnover proceedings.  Because the Collections were derived from assets already subject to BOA's prepetition lien, they did not fall within the carveout's scope, and BOA's entitlement to the Collections followed as a matter of law.  ECF No. 9, PageID.2991.  Contrary to the Plan Administrator's

characterization, the Bankruptcy Court did not resolve disputed factual issues at the pleading stage. Instead, it made a legal determination (based on the face of the Complaint, the Cash Collateral Order, and the confirmed Plan) that BOA was entitled to receive the collections regardless of the procedural mechanism used to collect them. That interpretation was consistent with the text and structure of the governing orders and with the Bankruptcy Code's treatment of liens on proceeds. Because the Bankruptcy Court's interpretation was reasonable and within the permissible range of constructions of its own orders, dismissal of the clawback claims was not an abuse of discretion.

### 2. *State Law Claims (Counts III-VII)*

The Bankruptcy Court dismissed each of the remaining claims under Rule 12(b)(6) for failure to state a claim, and the Plan Administrator challenges that ruling on appeal. Accordingly, the Court reviews *de novo* whether the Bankruptcy Court correctly concluded that the Complaint failed to state plausible claims for relief under governing non-bankruptcy law. *See In re Rosenfeld*, 558 B.R. at 828.

#### a. *Breach of Contract (Count IV)*

The Plan Administrator argues the Bankruptcy Judge erred by rejecting plausible allegations that the Loan Agreement was modified by course of conduct and then breached. ECF No. 6, PageID.2299. BOA's Response argues that the court correctly rejected modification-by-conduct theories as barred by the contract's

express terms.  ECF No. 8, PageID.2941-2944.  The Court concludes that the Plan

Administrator's breach of contract claim fails as a matter of law.

First, these claims are not actionable because they are barred by the Statute of

Frauds.  The Sixth Circuit has recognized that under Michigan law, any promise by

a financial institution must be in writing to be enforceable.  *Evans v. Bank of New

York Mellon*, 2017 WL 4387293, at *3 (E.D. Mich. 2017) (citation modified).[2]

Absent from the complaint are any "writings" which are alleged to form the basis of

modifying the terms of the Loan Agreement.

Further, the Court rejects the Plan Administrator's contention that the claim's

dismissal was premature because the judge was not supposed to consider whether

the documents produced by the PA in their Complaint "factually satisfied the Statute

of Frauds," since the parties had not yet gone through discovery.  ECF No. 6,

PageID.2317.[3]  At the Rule 12(b)(6) stage, the absence of discovery is immaterial

where, even accepting the alleged facts as true, the claim is barred by a legal

requirement that cannot be cured through additional factual development.  *Hensler

v. Quality Temporary Services, Inc.*, 2016 WL 3137820, at *2 (E.D. Mich., 2016)

---

[2] New York Law also requires modification to financial instruments to be in writing.  *Fields v. Baker & Hostetler LLP*, 79 Misc. 3d 1213(A), 190 N.Y.S.3d 668 (N.Y. Sup. Ct. 2023).

[3] Counts V and VI necessarily fail for the same reason, but the Court will outline the additional reasons these claims should not survive below.

(citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)) ("Dismissal under Rule 12(b)(6) is proper when the applicable statute of limitations bars the claim.").

The Plan Administrator does not dispute that the law requires that any modification to a loan agreement involving a financial institution must be memorialized in a signed writing to be enforceable. *See Evans*, 2017 WL 437293 at *3; *Ralco, Inc. v. Citibank, N.A.*, 32 A.D.3d 301, 301, 820 N.Y.S.2d 248, 248-49 (1st Dep't 2006).   Instead, it argues that the BOA's lending conduct and e-mail communications with Rapid evidenced a valid modification of the loan agreement. ECF No. 6, PageID.2317.  The Court disagrees.

The majority of the referenced emails consist of internal BOA communications reflecting internal deliberations about reporting requirements and advance approvals, not writings evidencing an agreement with the Debtor.  ECF No. 7, PageID.2328.  The sole email alleged to include the Debtor merely transmits an updated request list and does not purport to modify the Loan Agreement or bind BOA to altered contractual obligations.  *See* ECF No. 7, PageID.2375.  The Court finds this insufficient to allege a modification of the terms of the Loan Agreement under the Statute of Frauds.  *Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48, 55-56, 110 N.E.2d 551 (1953) (Requiring that writings evincing a purported modification contain all of the "essential terms.")

Independently, the Loan Agreement itself expressly requires that any modification be made in a signed writing, foreclosing modification by informal communications or course of conduct even apart from the Statute of Frauds. ECF No. 9, PageID.3346. Thus, even consistent with the terms of the agreement, the breach of contract claim would fail as a matter of law for failing to allege a breach sufficiently.

Finally, because the Loan Agreement vested BOA with express discretion over advance approvals and borrowing-base determinations, the Complaint alleges only dissatisfaction with the consequences of BOA's discretionary decisions, rather than damages resulting from the breach of an enforceable modified agreement. *See generally* ECF No. 7, PageID.2382-2384. Even assuming the existence of email communications and lending conduct consistent with the alleged modification, the Plan Administrator does not sufficiently allege a breach of contract claim. To make a plausible claim for breach of contract, the Plan Administrator must plead that (1) there was a contract, (2) there was a breach of the contract, ***and*** (3) the breach resulted in damages. *See 19900 W. Nine Mile, LLC v. Handover Ins. Co.*, 676 F. Supp.3d 534, 544 (E.D. Mich. 2023) (citation omitted) (emphasis added). Without damages, the contract claim fails. Consequently, the Bankruptcy Court properly dismissed the breach of contract claim.

### b. Breach of Implied Covenant of Good Faith (Count VI)

The Plan Administrator alleges that BOA breached the implied covenant of good faith when it abused its contractual discretion in a dishonest manner that ultimately gave it an unfair advantage over other creditors, even if technically permitted by the Loan Agreement's terms.  ECF No. 7, PageID.2385-2386.  Because the Loan Agreement expressly vested BOA with discretion over advances, borrowing-base determinations, and the application or waiver of ineligibles, the implied covenant of good faith and fair dealing (Count VI) cannot be used to impose substantive limits on BOA's discretion that the parties did not bargain for.  *Laurels of Lake Orion, LLC v. First National Orion Loan, LLC*, 2020 WL 1866095, at *6 (E.D. Mich. 2020) ("[T]he obligation of good faith cannot be employed to override express contract terms" nor can it be used "as a tool for rewriting the parties' agreement based on unspecified notions of fairness.") (citation modified).

The Plan Administrator's claim rests on allegations that BOA exercised its contractual discretion in ways that proved unfavorable to Rapid but does not allege that BOA's conduct violated any express contractual provision.  Instead, the claim seeks to recast BOA's discretionary lending decisions as breaches of the implied covenant, thereby effectively rewriting the Loan Agreement to convert discretionary authority into mandatory obligations, which his prohibited as a matter of law.  *Union Commercial Services Limited v. FCA International Operations, LLC*, 785 Fed.Appx.

309, 315 (C.A.6 (Mich.), 2019) ("Even when a contract obliges a party to perform in its discretion, the implied covenant cannot work 'to override express contract terms.'") (citation modified).

Moreover, the complaint alleges no non-conclusory facts suggesting that BOA exercised its discretion dishonestly, arbitrarily, or for an improper purpose, as opposed to making business decisions expressly permitted by the contract. *In re Leix Estate*, 797 N.W.2d 673, 682 (Mich. App. 2010). Absent such allegations, dissatisfaction with the consequences of BOA's discretionary decisions does not state a claim for breach of the implied covenant of good faith and fair dealing.

### c. *Equitable Subordination and Breach of Fiduciary Duty (Counts III and V)*

In bringing its equitable subordination claim, the Plan Administrator alleged that BOA engaged in unfair conduct before bankruptcy, such as ignoring warning reporting deficiencies and improperly allowing advances, and therefore BOA's claim should be pushed behind other creditors in priority. ECF No. 7, PageID.2381-2382. BOA argued the claim should be dismissed because the complaint failed to plead inequitable conduct that amounted to "inequitable conduct sufficient for subordination," as required under the law. ECF No. 8, PageID.2941. The Bankruptcy Court agreed.

On appeal, the Plan Administrator argues the judge improperly required proof rather than plausibility of inequitable conduct and creditor harm at the Rule 12(b)(6)

stage.  ECF No. 6, PageID.2313.  BOA argues the judge correctly applied the law by requiring plausible allegations of inequitable conduct and creditor injury, which were not pleaded.  ECF No. 8, PageID.2937-2940.

A lending relationship does not give rise to fiduciary duties absent allegations that the lender exercised domination or control over the borrower's day-to-day operations.  *In re M.T.G., Inc.*, 646 B.R. 1, 112 (Bkrtcy. E.D. Mich. 2022) ("Only "where the lender exercises control over all or substantially all aspects of the finances and operations of the debtor" will a fiduciary relationship between a lender and borrower be found.").  Routine lender conduct, such as monitoring collateral, enforcing loan covenants, conditioning advances, and exercising contractual discretion—does not transform a creditor into a fiduciary.  *Id*. at 105.  Similarly, equitable subordination under 11 U.S.C. § 510(c) is an extraordinary remedy that requires plausible allegations of "gross misconduct tantamount to 'fraud, overreaching, or spoliation to the detriment of others'" *In re J & M Salupo Dev. Co*., 388 B.R. 795, 805 (BAP 6th Cir. 2008) (citation modified).

Here, the Complaint alleges that BOA exercised oversight over Rapid's borrowing base, imposed reporting requirements, approved advances, and enforced the terms of the Loan Agreement in ways that ultimately proved unfavorable to Rapid and its creditors.  ECF No. 7, PageID.2384-2385.  The Court finds that these allegations, even taken as true, describe ordinary lender conduct expressly

contemplated by the parties' contractual relationship, not any egregious misconduct as required.  The Complaint does not allege that BOA assumed control over Rapid's day-to-day operations, directed its business decisions, or displaced management's authority.  Nor does it plead facts suggesting self-dealing, fraud, or other egregious misconduct of the type required to support equitable subordination.  The alleged harm likewise consists solely of unfortunate consequences flowing from Rapid's financial deterioration, not injury caused by inequitable conduct distinct from BOA's role as a secured lender.  Simply put, poor business judgment or the aggressive enforcement of contractual rights is insufficient to support either claim.

Because the Complaint alleges no facts plausibly establishing either a fiduciary relationship or the type of egregious misconduct necessary to warrant equitable subordination, the Bankruptcy Court correctly dismissed Counts III and V for failure to state a claim.

### d.  Negligence (Count VII)

The Plan Administrator also failed to state a claim for negligence for similar reasons.  To plead negligence under applicable state law, a plaintiff must allege the existence of a duty independent of contractual obligations, a breach of that duty, causation, and legally cognizable damages.  *Polidori v. Bank of America, N.A.*, 977 F.Supp.2d 754, 763 (E.D. Mich. 2013).  Here, the Complaint alleges that BOA acted negligently by failing to adequately monitor Rapid's financial condition, by

continuing to extend credit, and by enforcing or relaxing lending requirements in a manner that allegedly contributed to Rapid's financial collapse.   ECF No. 6, PageID.2318.

Relying on *Boyd v. Sachs*, the Plan Administrator argues that a lender can be placed in a fiduciary capacity "where excessive lender control and influence can be established."   153 B.R. 457, 479 (Bankr. W.D. MI. 1993).   However, since these allegations do not rise to the requisite level of influence and control, the Plan Administrator has failed to allege that BOA owed Rapid any duty independent of the parties' contractual relationship.   Instead, the claimed misconduct arises entirely from BOA's performance of its rights and obligations under the Loan Agreement and asserts only economic harm flowing from Rapid's inability to meet its financial obligations.   Because the Complaint merely repackages alleged contractual breaches as negligence and fails to plead any independent duty, the Bankruptcy Court properly concluded that Count VII is barred as a matter of law.   Dismissal of the negligence claim was therefore appropriate.

## IV.

For the reasons stated above, the Court concludes that the Bankruptcy Court did not abuse its discretion in dismissing the Plan Administrator's clawback claims (Counts I, II, and VIII) and did not err as a matter of law in dismissing the remaining state-law and equitable claims (Counts III through VII) for failure to state a claim.

Accordingly, the Bankruptcy Court's Order granting Bank of America, N.A.'s Motion to Dismiss is **AFFIRMED** in all respects.   The adversary proceeding remains **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

Dated: January 27, 2026                    s/Brandy R. McMillion
      Detroit, Michigan                    HON. BRANDY R. MCMILLION
                                        United States District Judge